UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JESSICA PLANKA,

                  Plaintiff,

v.

AURORA HEALTH CARE, INC.,

                  Defendant.

Case No. 20-CV-511-JPS

**ORDER**

**1.    BACKGROUND**

Plaintiff, who is represented by counsel, filed both a complaint and a motion for leave to proceed *in forma pauperis*, (i.e., without prepaying the $400.00 filing fee). (Docket #1, #2). To allow a plaintiff to proceed *in forma pauperis*, the Court must decide whether the plaintiff has the ability to pay the filing fee and, if not, whether the lawsuit states a claim for relief. 28 U.S.C. § 1915(a), (e)(2)(B). As explained in the balance of this Order, the Court will grant Plaintiff's motion to proceed *in forma pauperis* and finds that, at this stage, Plaintiff has stated a claim for relief under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* However, the Court finds that Plaintiff has not stated a claim for relief under the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, and will dismiss that claim without prejudice.

**2.    PLAINTIFF'S INDIGENCE[1]**

The Court first addresses the question of Plaintiff's indigence. Notably, Plaintiff need not show that she is totally destitute. *Zaun v. Dobbin*,

---

[1]Unlike many litigants seeking to proceed without prepayment of the filing fee, Plaintiff is represented by counsel. However, this does not preclude Plaintiff from proceeding *in forma pauperis*. *See Neitzke v. Williams*, 490 U.S. 319, 330 n.9

628 F.2d 990, 992 (7th Cir. 1980). However, the privilege of proceeding *in forma pauperis* "is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them." *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972).

Upon review of Plaintiff's motion, the Court finds that she is indigent. Although Plaintiff includes the name of her employer and that she earns $945.00 per month, Plaintiff claims that she is unemployed because her job is "on hold due to the [sic] COVID-19." (Docket #2 at 1–2, 4). Further, when Plaintiff filed her motion, she was unsure whether she would receive unemployment compensation. (*Id.* at 4). Thus, Plaintiff's only sources of income are through the state medical insurance and food share programs, from which she receives approximately $645.00 per month. (*Id.* at 2, 4).

As far as Plaintiff's expenses are concerned, Plaintiff has three dependents, for whom she provides a total of $750.00 of support per month. (*Id.* at 1). She claims to have about $948.00 in household and other expenses. (*Id.* at 2–3). Plaintiff does not own her own home or have any other significant assets, such as a car. (*Id.* at 3). Lastly, while Plaintiff does have a bank account, she avers that she has approximately $200.00 in that account. (*Id.*) Based on the foregoing, the Court determines that Plaintiff is indigent and will allow her to proceed without prepayment of the filing fee.

3. **SCREENING OF PLAINTIFF'S CLAIMS**

Notwithstanding the payment of the filing fee, when a plaintiff seeks to proceed *in forma pauperis*, the Court must screen the complaint. When

---

(1989) ("[I]t is possible for a plaintiff to file *in forma pauperis* while represented by counsel.").

screening a complaint, the Court must dismiss the complaint, or any portion thereof, if the plaintiff has raised claims that: (1) are legally frivolous or malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [she] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary to plead specific facts; rather, the plaintiff's statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

Lastly, the Court notes that because Plaintiff is represented, the Court "do[es] not construe the pleadings as liberally as [it] would if [Plaintiff] appeared *pro se*." *Zboralski v. Monahan*, 446 F. Supp. 2d 879, 881 (N.D. Ill. 2006). With the foregoing in mind, the Court turns to Plaintiff's claims.

### 3.1    RELEVANT FACTS[2]

In June 2015, Plaintiff began working for Defendant as a Medical Assistant. As such, Plaintiff was responsible for "benchmark reporting, quality control binders maintenance, daily count of controlled substances, and flu inventory, *inter alia*." Plaintiff alleges that she performed her job duties in accordance with Defendant's reasonable expectations.

Plaintiff's physician diagnosed her with torticollis and vertigo in April 2016. Plaintiff claims that she suffers from these disabilities "[a]s a result of a lack of ergonomic conditions" at her workplace.[3] According to Plaintiff, these disabilities significantly affect her ability to sit, sleep, and administer care to both herself and others.

---

[2] The relevant facts are from Plaintiff's complaint, (Docket #1).

[3] Plaintiff avers that Defendant did not provide Plaintiff with an ergonomic workstation in a timely manner. (*See* Docket #1 at 3). Plaintiff also states that neither Defendant nor The Hartford "ever engaged in an interactive process with Plaintiff to determine if they could reasonably accommodate her disabilities. (*Id.*) However, as discussed, *infra*, Plaintiff seeks relief from Defendant only on the basis of (1) Defendant's alleged FMLA interference by claim "denying [Plaintiff's] FMLA leave and failing to honor her previously approved leave," and (2) intentionally discriminating against Plaintiff by terminating her employment on the basis of her disabilities in violation of the Rehabilitation Act. (*Id.* at 6). Therefore, the Court disregards Plaintiff's random discussion of Defendant's failure to provide Plaintiff with an ergonomic workstation or its failure to accommodate her, as Plaintiff does not appear to seek relief on those grounds.

On February 27, 2017, Plaintiff submitted a request for intermittent leave pursuant to the FMLA, and Defendant approved her request. Plaintiff alleges that her FMLA medical certification stated that "Patient has torticollis & vertigo. When patient has flare up[,] patient is unable to work due to medications needed[,] which cause drowsiness in which the patient is unable to drive." The certification estimated Plaintiff's period of incapacity to be from January 16, 2017 to December 31, 2017.

Plaintiff avers that, effective July 1, 2017, Defendant began using a third-party, The Hartford, to administer its FMLA leave. Thereafter, Defendant's employees were to submit their FMLA leave requests directly to The Hartford. Plaintiff claims that once The Hartford took over this task, Plaintiff began to have trouble with her leave requests. According to Plaintiff, The Hartford treated Plaintiff's previously approved FMLA intermittent leave certification as "expired." Believing that Defendant had already approved Plaintiff to take intermittent leave through December 31, 2017, Plaintiff continued to take leave for herself and to care for her daughter. However, Defendant considered Plaintiff's absences to be unapproved, counting them against her. Plaintiff states that Defendant never informed her of its determination that such absences were unapproved. Additionally, Plaintiff notes that neither Defendant nor The Hartford requested additional information from her medical provider or for clarification regarding her medical certification. While The Hartford communicated with Plaintiff's supervisor, Marie LaMartina ("Ms. LaMartina"), regarding Plaintiff's FMLA requests, Ms. LaMartina did not share those communications with Plaintiff.

Eventually, on October 3, 2017, Defendant issued Plaintiff a written warning pertaining to her excessive absenteeism. Plaintiff avers that this

Page 5 of 12
Case 2:20-cv-00511-JPS   Filed 06/09/21   Page 5 of 12   Document 11

warning listed many absences that were covered by Plaintiff's previously approved 2017 FMLA leave or her request for leave for her daughter's surgery. Upon noticing this discrepancy, Plaintiff informed Ms. LaMartina that her absences should have been considered approved FMLA leave. Moreover, Plaintiff wrote on the written warning that she was going to check on this matter because she had submitted paperwork regarding her daughter's operation.

Plaintiff also claims that as soon as she realized The Hartford needed information, she resubmitted her own doctor's certification for FMLA leave, dated October 2, 2017. Nevertheless, The Hartford did not backdate Plaintiff's medical certification to cover her previous absences. Defendant then issued Plaintiff a final warning due to her alleged excessive absenteeism. Plaintiff noticed that many of the absences on this October 27, 2017 final warning were covered by her previously approved leave. When notifying Ms. LaMartina that her absences should have been covered by FMLA, Plaintiff wrote "Denials for FMLA was [sic] not made aware to me, contacting Hartford in regard to [sic] matter." According to The Hartford, Plaintiff qualified for leave due to her daughter's surgery, but The Hartford had not received paperwork from her daughter's doctor. Further, it informed Plaintiff that it sent email reminders to Ms. LaMartina that indicated that Plaintiff's FMLA leave certification paperwork was incomplete. Plaintiff alleges that Ms. LaMartina did not tell her that there were any problems with her requests. Then, on March 5, 2018, Defendant terminated Plaintiff for excessive absenteeism. Plaintiff avers that, at this time, Defendant had knowledge that it should have considered many of Plaintiff's absences to be approved FMLA leave and that such absences should not have counted against her attendance record.

Page 6 of 12
Case 2:20-cv-00511-JPS   Filed 06/09/21   Page 6 of 12   Document 11

### 3.1.1 FMLA CLAIM

First, Plaintiff brings an FMLA interference claim against Defendant. Specifically, Plaintiff alleges that "Defendant intentionally interfered with [her] FMLA rights by denying her leave and refusing to honor her previously approved FMLA leave."[4] (Docket #1 at 6). The FMLA makes clear that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," its employees' FMLA rights. 29 U.S.C. § 2615(a)(1). To state a claim for FMLA interference, Plaintiff must allege that:

> (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.

*Pagel v. TIN Inc.*, 695 F.3d 622, 627 (7th Cir. 2012). The Court finds that Plaintiff has either alleged, or the Court can reasonably infer, the

---

[4] As a part of Plaintiff's first claim for relief, "FMLA Interference," Plaintiff says that she has suffered damages, not as a result of such interference, but "[a]s a result of Defendant's intentional discrimination." (Docket #1 at 6). The Court will disregard Plaintiff's fleeting reference to "discrimination." Surely, a claim of employer interference with an employee's exercise of his or her FMLA rights, *see* 29 U.S.C. § 2515(a)(1), is different from a claim that an employer has discharged or discriminated against an employee for exercising those rights, *see* § 2615(a)(2). Such claims should not be conflated, as they require different legal tests. *Compare Pagel*, 695 F.3d at 627 (outlining the legal test for an FMLA interference claim), *with Edwards v. Regis Corp.*, Case No. 07-C-0652, 2009 WL 10676506, at *8 (E.D. Wis. June 2, 2009)("In a case where an employee is alleging discrimination based on the FMLA, the issue becomes whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus.")(internal quotations and citation omitted). Therefore, if Plaintiff wishes to bring a separate, additional claim for FMLA discrimination, she must file an amended complaint.

aforementioned elements in her complaint and will address each element, in turn.

Based on Plaintiff's allegation that Defendant approved Plaintiff's February 27, 2017 FMLA request for intermittent leave, the Court can reasonably infer that Plaintiff was both eligible for and entitled to FMLA leave, and that Defendant was an employer covered by the FMLA. Thus, at this stage, Plaintiff has sufficiently pleaded elements one through three.

The Court also finds that it can reasonably infer that Plaintiff provided her employer with adequate notice to take FMLA leave. Plaintiff states that "[a]fter The Hartford began administering Defendant's FMLA leave, Plaintiff began to have trouble with her FMLA leave requests." (Docket #1 at 3). To be sure, "[an] employee[] [is] required to provide an employer with sufficient notice that she is using leave under the FMLA in order to invoke its protections . . . ." *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 593 (E.D. Pa. 2017). However, "an employee can satisfy her notice obligation without expressly asserting or even mentioning her rights under the FMLA and without providing enough detailed information to know if the FMLA actually applies." *Id.* at 593–94 (internal quotations, alterations, and citation omitted). At a time prior to the events leading to this litigation, Plaintiff had successfully requested and received FMLA leave from Defendant. (*See, e.g.*, Docket #1 at 2–3). At this stage, the Court can reasonably infer from Plaintiff's allegations that she was making the same type of FMLA leave requests to The Hartford that she had previously submitted to Defendant, with which Defendant had not had any issues (i.e., such prior notice was satisfactory). Further, Plaintiff alleges that after The Hartford took over in July 2017, it communicated with Plaintiff's

supervisor regarding her FMLA requests, indicating that it needed additional information. (*Id.* at 4). Based on the foregoing, the Court finds that Plaintiff has sufficiently alleged that she gave Defendant, by way of its third-party administrator, notice of her intent to take FMLA leave.

Lastly, Plaintiff has sufficiently pleaded, at this stage, that Defendant interfered with her FMLA rights. "As a general matter, 'employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . . .'" *Pagel*, 695 F.3d at 629 (quoting 29 C.F.R. § 825.220(c)). Plaintiff alleged that prior to when Defendant hired The Hartford, Defendant approved her to take intermittent leave throughout 2017. (Docket #1 at 3). Unbeknownst to Plaintiff, as she continued to take what she assumed was approved leave, Defendant was treating such leave as unapproved. (*Id.* at 4). Plaintiff claims that Defendant did not inform her of this determination and withheld communications regarding her leave requests. (*Id.*) Further, instead of seeking clarification from Plaintiff regarding her absences, Defendant disciplined and eventually terminated Plaintiff. (*Id.* at 4–5). Moreover, Plaintiff avers that after resubmitting her doctor's certification regarding Plaintiff's intermittent leave request, The Hartford failed to backdate the certification to cover Plaintiff's prior absences. (*Id.* at 5). The Court finds that Plaintiff pleaded that Defendant interfered with her rights under the FMLA by penalizing her for taking what she believed to be approved leave. Therefore, Plaintiff may proceed with her FMLA interference claim.

### 3.1.2 REHABILITATION ACT DISCRIMINATION CLAIM

Plaintiff also claims that Defendant "intentionally discriminated" against her when it terminated her because such termination was on the

basis of Plaintiff's disabilities, in violation of the Rehabilitation Act. (*Id.* at 6). Pursuant to the Rehabilitation Act:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a)(1). To state a viable claim of discrimination under the Rehabilitation Act, a plaintiff must show that (1) she is disabled as defined by the Act; (2) she is otherwise qualified for the position sought; (3) she has been excluded from the position solely because of her disability; and (4) the position exists as part of a program or activity receiving federal financial assistance. *Massey v. Churchview Supportive Living, Inc.*, No. 17 C 2253, 2018 WL 999900, at *2 (N.D. Ill. Feb. 21, 2018) (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 755 (7th Cir. 2006)).

At this juncture, the Court finds that Plaintiff's allegations are deficient, specifically with regard to the third factor of her discrimination claim. As discussed in Section 3 *supra*, Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference" that Defendant terminated Plaintiff because of her disabilities. *Twombly*, 550 U.S. at 556. Upon scouring Plaintiff's complaint, the Court finds that Plaintiff alleges that she was disabled, which prompted her to request and take FMLA leave, and that, in turn, Defendant interfered with her ability to take such leave. To be sure, in her "Second Claim for Relief," Plaintiff avers that "Defendant intentionally discriminated against [her] on the basis of her disabilities by terminating her employment, in intentional disregard of her federally protected rights under the Rehabilitation Act . . . ." (Docket #1 at 6). However, Plaintiff has not alleged any facts that suggest that Defendant

terminated Plaintiff solely on the basis of her disability, as required under the Rehabilitation Act. Merely alleging that her disabilities caused her to take FMLA leave is insufficient, as this does not provide Defendant with fair notice that Plaintiff perceived her disabilities to be the sole factor—let alone *a* factor—in her termination. Based on the foregoing, the Court dismisses Plaintiff's Rehabilitation Act claim without prejudice for failure to state a claim.

### 4. CONCLUSION

The Court will grant Plaintiff's motion to proceed *in forma pauperis*, (Docket #2), and, as such, Plaintiff is not required to prepay the $400.00 filing fee. Upon screening Plaintiff's complaint, the Court determines that Plaintiff may proceed as to her FMLA interference claim against Defendant. However, for the reasons explained in Section 3.1.2, *supra*, the Court will dismiss without prejudice Plaintiff's claim for relief pursuant to the Rehabilitation Act. However, the Court will give Plaintiff leave to amend her complaint at this juncture. Plaintiff will have until **June 23, 2021** to file an amended complaint with the Court.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's claim for relief pursuant to the Rehabilitation Act (Docket #1 at 6) be and the same is hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that if Plaintiff chooses to file an amended complaint, she must file that complaint on or before **June 23, 2021**.

Page 11 of 12
Case 2:20-cv-00511-JPS   Filed 06/09/21   Page 11 of 12   Document 11

Dated at Milwaukee, Wisconsin, this 9th day of June, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge